May it please the Court, James Fife of Federal Defenders, on behalf of the Appellant Mr. Rojas-Pedroza. That sentencing the District Court legally erred under Ochoa-Gaetan by denying an adjustment for acceptance of responsibility solely for exercising a constitutional right. It also imposed an excessive sentence of supervised release in an ordinary case manifesting a reduced need for deterrence, not an elevated one. Turning to the acceptance of responsibility under guideline section 3E1.1, this case is on all fours with Ochoa-Gaetan. There the Court said that the exercise of a constitutional right cannot be held against the defendant. That's precisely what the District Court here did. The only reason it gave for denying an acceptance of responsibility adjustment was that he exercised, let me quote, he elected to stand on his constitutional rights, hold the government to a burden of proof to establish beyond a reasonable doubt all of the elements in the allegation. He then went on to talk about Officer Boyd, right, that he was contesting the factual evidence of guilt. That's number one, Your Honor, that's incorrect. And number two, that's the same thing as going to trial. Number one, it's factually incorrect because what he was attacking was the removed after date. That is not an element. Kagan. Why does that matter? I understand that. He omitted all of the elements of 1326A, but he was protesting 1326B. 1326B is a sentencing factor. Well, I understand that, but it's a sentencing enhancement that has to go to the jury under appending. And I don't really understand why that makes any difference in terms of the purposes of the acceptance of responsibility. It's still his responsibility for a, whether you call it an element of the crime or don't call it an element of the crime, it's something that has to be proven and or led to. So what difference does that make? It does have to be proven, but the difference it makes is stated right in application note to the guideline. It says that it can be denied when the defendant challenges an essential element of guilt. This is not an essential element of guilt. Well, that's sort of semantics. It's an essential element of guilt as to 1326B, no? Your Honor, I wish it were true that Almendar's Tories didn't require us to treat this as a sentencing factor, that it really is an element. Well, it doesn't, in fact. That's why it's going to the jury. But it is not an element. It is not an element of the offense. The Supreme Court's been clear about that. But, I mean, the Almendar's Tories is exactly the point, that if this was an Almendar's Tories situation, it wouldn't count. But it isn't one. It's one in which, because the maximum sentence is being increased, it does have to be proven and it does have to go to the jury. So why isn't it at least tantamount to an element? Is there any law in this question? No, I don't believe there is, Your Honor, because I don't think this situation has come up before. As to whether 1326, whether denying 1326, the legal question is whether denying the 1326B enhancement and having to go to a jury on it, even in total, would be qualified for an acceptance of responsibility? I don't believe so, Your Honor. I don't think it has come up. But let's just analogize it to other factors. What if a defendant challenged whether he had a minor role in a smuggling offense? What if he challenged? That is a Booker issue. It doesn't go to a jury and it doesn't have to be proven as essentially an element of the crime. That's what's unique about this. Your Honor, if Mr. Rojas had prevailed and the jury had found that he was not removed after that particular date, he would not have been acquitted, he would not have been released. I understand that. He would have been found guilty. But it's a nice question and one that was kind of only peripherally briefed here, whether nonetheless, because of the unusual character of this particular enhancement, the acceptance of responsibility goes to it. Your Honor, I think we have to go by what has been clear in the case law discussing this, what's clear multiple times in the commentary to 3E1.1, that it's talking about challenging essentials of guilt. Now, for instance, in the application note, they mention an example that wouldn't be this was if you challenged the constitutionality of the statute being charged. Now, to me, I don't quite understand that because that seems to be a challenge to your guilt. You're saying I'm not guilty because this is not a crime under the Constitution. That seems to be a challenge to guilt as well. But they said specifically that isn't a case. If you challenge the deport motion, if you just brought a challenge saying this was an invalid deportation, that seems to be challenging your guilt, saying I was not lawfully removed. But both of those are going to be purely legal challenges. As is this one, Your Honor. This is particularly, he's just challenging the basis on the reasonable doubt going only to the sentencing factor. That's not a purely legal challenge. Well, Your Honor, he has that. It's a fact-based challenge that required a hearing to go to the jury. I apologize, Your Honor. I think the question here is a legal question. But, yes, he was challenging on reasonable doubt that was proof of the sentencing factor. And the cases say that if you go to trial, you have a right to challenge. Ochoa Gaitan specifically says it's crucial. The difference between going to trial, sorry, the difference between requiring the government to satisfy its burden and falsely denying a criminal conduct is crucial. He has not denied any conduct. He did not deny that he was removed in April. Denied that he was removed and came back afterwards. He did not, Your Honor. He only challenged the government's level of proof by showing that the witnesses didn't remember him. They didn't remember what happened that day. And, crucially, they didn't sign the warrant. But if he had done the same with regard to the 1326A, then you wouldn't be here. That's correct, Your Honor. So everything turns on this notion that the 1326B is not what they're talking about under the acceptance of responsibility. I think so, Your Honor. Let me retract that a little bit. I still think that making a reasonable doubt defense, even to an essential element, isn't, again, under the case law isn't necessarily dispositive in saying this person didn't accept responsibility. Well, is it if there's no substance to the defense? The commentary speaks both of a defendant who falsely denies or frivolously contests relevant conduct the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. It's not simply a matter of the defendant sitting on the stand and himself denying. But if the defense challenges something the court comes to say, that's not seriously challengeable. Isn't that a basis for saying that the defendant hasn't accepted responsibility? That's right, Your Honor. And I think that's exactly the difference between this case and Ramos Medina, is because in that case the court found that given the pretrial rulings, it was frivolous to challenge that he had the elements that he challenged at trial. What wasn't frivolous here? I mean, in the end, is there any real doubt about the fact of removal? Yes, Your Honor. I think there's classic reasonable doubt that in this case where a jury could have found. I don't know that he was removed on that day because we brought in the witnesses. They testified that they don't remember Mr. Rojas personally, of course. They don't remember the events of that day precisely. And most critically, the warrant of deportation wasn't signed. And therefore, there's some question whether Mr. Rojas was removed. That certainly, I think, rises to the level of reasonable doubt that a jury could have been reasonably found. I just don't find he was removed. Let me see if I can explain what I understand happened here. Sure. Shortly before this sentencing, the guidelines were changed to say essentially that ordinarily there should not be supervised release for an illegal entry unless there's particular reasons needed for deterrence, something to that effect. Right. And here the district court said nothing about this. Nothing. All right. So are you arguing essentially for a prophylactic rule that because of the particular content of this new commentary, there has to be an actual acknowledgment and explanation, or exactly what? I think in the future that this case is a little bit unique because the amendment hadn't gone into force at the time. Oh, it hadn't gone into force. Oh, this is the one. We had two cases, one where it hadn't gone into force and one where it had. This is the case where it had not gone into force. It had been promulgated but not yet gone into force. That is, Congress had not acted. So why is Ruisa Polonio not applicable here? I don't believe so, Your Honor. I mean, for one thing, this is a different type of error. But I think in this case we can specifically point to the courts' Kimbrough authority that regardless of whether there's been an amendment or no amendment at all, as in Kimbrough, there had been no amendment. The commission had not acted on the crack-to-powder ratio. And yet it was perfectly reasonable for the district judge to take that disparity, the empirical evidence into account, and to exercise its duty, to fulfill its duty. But nobody asked him to. No, that's correct, Your Honor. But this Court does have a duty under Autry to consider the substantive reasonableness of all sentences, whether objected to or not. So why does it make it? I mean, I understand the Kimbrough argument, but Kimbrough didn't say it was unreasonable not to consider. What authority is there for us to say it's unreasonable for the district court to do what it did here in imposing supervised release? Number one, it provided no explanation whatsoever why supervised release was necessary, let alone why the statutory maximum term was required. In fact, whatever facts there are in the record going to this, it showed that there was a reduced need for deterrence here. I mean, this person is going to be deported, right? Correct. So supervised release really doesn't count for anything unless the person comes back into the country. That's right, Your Honor. So I'm not sure that I really understand what the real-world import of this is. I mean, that's why the commission finally said, let's stop imposing supervised release as a matter of course, but for years, indeed decades, supervised release was being imposed as a matter of course. That doesn't mean it was unreasonable. Well, Your Honor, now that the latest empirical data and the research that the commission has made, and we're supposed to respect the commission's research into this, they found that in the ordinary case, this is not necessary, that the threat of an additional independent prosecution and the hurdles that are required to cross the border are sufficient deterrent that in the ordinary case, this is not necessary. Now, Mr. Rojas' case is not ordinary only in the sense that he has a reduced need for deterrence here because he was expressed sincere remorse for his crime. This was his first immigration offense. He had a transitory reason for coming back. Well, it wasn't his first offense. He served like two years for the prior, what was the prior sentence? It was a prior sentence for alien smuggling. Alien smuggling, okay. Yes, but it was the first particular time that he's been told, you have illegally reentered, and so there's no track record to show that he was likely to have. Well, one last question. You haven't argued at all about what I thought was your main argument in your brief, which is about the validity of the original removal. Yes, Your Honor. I thought that that had been thoroughly briefed and the issues narrowed. Let me just say. The issue at this point, it seems to me, is the plausibility of him getting relief at the time of the 1998 removal. Correct, Your Honor. And do you have anything you want to say about that? Yes. His problem is that he had no family here at all. Well, he does have family here. It's unclear in the record whether the family was here in 1998 that he could have. It certainly wasn't apparent to the IJ because he said he didn't. He did, Your Honor, but that's before it was explained to him. So let's assume that for now. Then what? He has, Your Honor, he had a long residence and a long work history. He was an agricultural and applied first law. He was denied it because. Well, there wasn't really any evidence of work history, either, except this thing that was impeached by some guy who was later found to be fraudulent. That's right, Your Honor. Well, I would say that if his positive equities were modest, they only have to overcome a rather extremely minor criminal history. Compared to the other cases. Plus the fact that he'd been removed the year before and he came right back. That's right, Your Honor. But even in the cases that I cited, like Sanabria Dominguez, where the person had multiple returns, multiple deports, that again didn't. He had five convictions, right? 89, 93, 94, 95, and 96. No, Your Honor, I believe he had four misdemeanor convictions, two of them resulting in fines only, and two of them resulting in actual sentences of 60 days. Basically, it was some DUIs and driving without a license. That's correct, Your Honor. And though the government says he also had probation violations, I think if you see the probation violations were in 1997, I think the obvious thing to conclude is that he didn't report in because he'd been deported and the courts violated him. And then they later terminated the probation violations when they probably realized that he'd been deported and couldn't report in. That would be my reading of the record. So he had two very minor offenses, traffic offenses, that resulted in fines. And two DUIs, both of them charges of misdemeanor, though of course the state of California thought if they were more egregious, they could have charged the second one easily as a felony and didn't. So I think these were not really egregious records. So admittedly, he has only a modest argument for positive equities, but he has a much more benign record to overcome, unlike the cases that the government says where the person has admittedly very positive equities, but they had very serious criminal cases to overcome. It's a balance, and I think on the balance here, though the positive is not so great, the negative is not so great either. I don't think we can say that a reasonable immigration judge would abuse his discretion by granting voluntary departure in his case. And that's the only question that's at stake in a deportation. Okay, if you have any time at all, you should reserve it. Okay, thank you. Good morning. Kyle Hoffman for the United States. I'll take up the acceptance of responsibility issue first. The thing I'd like to emphasize here is it's the defendant's burden to clearly demonstrate acceptance of responsibility to the district court. Well, what's the answer to the legal question? I.e., does you would agree, I gather, that he did accept responsibility as to 1326A? I don't really have any great argument against that. Okay, so it appears that what we're really talking about. And the district court, I mean, specifically made its ruling based on the April 2010 removal and the challenge to that. Right, so the question is, is there anything to this notion that because the acceptance of responsibility says that he's, the question is whether he's accepted responsibility or accepting guilt, the fact that what he's contesting isn't his guilt as such, but instead this sentencing enhancement just essentially means that the acceptance of responsibility limitation doesn't apply to him. That's what I understand at bottom the argument to be. I don't have a case, for your honor, that says one way or the other. Okay, so that's argument from first principles then. Right, but I would point to the language of the guidelines themselves, which include not only the offense of conviction, which query whether the sentencing enhancement is the offense of conviction or not, but also includes relevant conduct and not frivolously contesting that. So we're already beyond the bounds of just the, as Mr. Fife put it, the essential elements. And second of all, we're talking about something which your honor has pointed out repeatedly, that the government has to prove to a jury beyond a reasonable doubt to get the sentencing enhancement, to convict this defendant of 1326B. I would suggest that it's a bit just a semantic argument whether that's an essential element or not. The government has to meet that burden. It looks, walks, talks, looks like an essential element in that respect. So I would say even on that argument it fits into. I think there's some old law when it matters saying it's not an element, but that's because it had different implications at that time. Right, but the point I would urge upon the court is simply that where the government has to prove something beyond a reasonable doubt for it to apply, that looks, walks, talks, very much like an essential element. In Ramos-Medina, we also considered whether the defendant had expressed contrition or remorse and whether the district court erroneously thought there was a per se bar. How does that factor into our analysis here? Two ways. One, I don't believe there's any indication in the record that the judge said just because you've gone to trial, I am going to deny you acceptance of responsibility. So I don't think there's any indication that there was a per se bar. That's sort of what he said. Mr. Rojas did not accept responsibility. He elected to stand on his constitutional rights, hold the government to its burden of proof to establish beyond a reasonable doubt it's all the element in the allegation. Right, but the factual aspect that the court pointed to was the challenge to the April 2010 removal, that aspect of things. And the point, getting to the contrition aspect of it, is he never affirmatively stood up and said, yes, I was deported in April 2010. I really didn't have a challenge to that. He did say, I'm sorry for coming back. But he didn't say, you know what, that whole business at trial was, I don't know, I'm sorry about it. I really was deported in April 2010. So going to your Honor's point about did the defendant meet his burden of demonstrating sincere contrition, I would suggest not. Didn't do so. Was the contest a frivolous one? Well, I note that Mr. Fife said, well, there could have been reasonable doubt, could have been reasonable doubt. Well, there wasn't a reasonable doubt because the jury found that he was. Well, that can't be the answer in the end. I mean, being convicted doesn't mean that any challenge, any requirement. I mean, I look back to the commentary. And so they try to draw a line. It's not simply whether the defendant went on the stand and impeached himself or lied by saying I didn't do it, so on and so forth. But on some level, a defense being put up on behalf of the defendant, if it's deemed frivolous, that's inconsistent with acceptance of responsibility. And so I'm looking here, what was the case? Was there any bona fide basis for a defense so that putting the government to its proof still crossed the line or didn't cross the line? Well, I'd say a couple things about that. First of all, I don't think so. The only thing that was missing was a signature from Mr. Boyd saying, I saw this defendant go across the border. There was all kinds of other evidence that he was among a whole bunch of people, it always happens, and so on. The second point I would raise, going back to my initial argument, is it's a clear error standard. It's the defendant's burden to demonstrate sincere contrition. And so for us here to be sort of second-guessing the district court about Would the judge say he didn't have sincere contrition? He didn't use those words, no. No, he didn't. That isn't what he said. No, but he did focus on the able. What he said was he put the government to its proof. Right, but that's language, it's interesting. It has nothing to do with contrition. That's language from the guidelines section which says, this guideline is not intended for those who put the government to its proof, et cetera, and then only after trial admit. Now, I'd suggest that here there was never any admission about the April 2010 removal, not even after trial. Didn't tell a probation officer that and didn't say that to the court. Where is that statement? Oh, it's that statement. By denying the essential factual evidence. Okay. So I'm not going to stand in front of the court and say this is the slam, the easiest slam dunk, so to speak, for acceptance of responsibility, but I would suggest that it's not clear error for the district court to find that the defendant hadn't met his burden of demonstrating sincere contrition, particularly on this aspect. He never said that. I'm having a real problem with your argument. I can understand if you argued that what the district court meant when he said he put the government to its proof was that he made them prove something that showed he wasn't accepting responsibility. But in terms of contrition, that was not the district court's reason. No, he didn't use those words. I confess to that. But I'm suggesting that for the clear error kind of standard, with that being the defendant's burden to demonstrate that, I would suggest that. Clear error of what? I mean, part of the problem is that you can tell us that if he had used those words, okay, the question would be is it clearly erroneous for the court to decide there was no contrition. But he didn't say that. So what is it that your alleging defendant has to establish was clearly erroneous? Well, that the district court was clearly erroneous in finding that the defendant had not sincerely admitted and accepted responsibility for his crimes. Now, to get back to Your Honor's point about, well, was this frivolous or not, the district court sat through all the evidence about that. So I'm suggesting that he would be in the best position to understand whether that was a frivolous contestation or not. And that kind of wraps up with my clear error defendant's burden kind of argument. He's the one who sat there for a couple hours or whatever it was for the people to come in from Texas and say, you know, we do this all the time. It was just a simple error of human oversight that I didn't sign it. There was no question that he was deported. So that's my argument. If the court has further questions on that issue, I'd be happy to try to answer them. But that's my argument. The record is what it is. Exactly.  As for the supervised release issue, I just would mention that briefly, and that's that at the time the district court was positively, as a general rule, required to impose supervised release where sentences were over a year. And it had to make some findings to get out of that. What about the plausibility of the voluntary departure as to the earlier removal? Here's what I would suggest about that. It gets back to the whose burden is it, and what do they show in the district court? And it's the defendant's burden to show not just that he's statutory eligible, but it would be plausible for the IJ to grant voluntary departure. And what I would point the court to. Was this pre-conclusion voluntary departure? It must have been, Your Honor, that we're talking about. And the reason I say that is because if it were post, he would have to be in the United States for a year, and he wasn't. Does that make sense? It might have been some discussion about whether that was available at the time. Right. We haven't briefed that, but the point is that we're all assuming that he was eligible, and you can't be eligible for post-conclusion voluntary departure. All right, but for pre-conclusion. So for pre-conclusion, and then you say, but he had to have extraordinary. No, he didn't. He had minor. No, no, he doesn't have to. Very minor crimes. Right, but he has to show that it would be plausible for an IJ to grant relief. And I point the court to what he actually provided to the district court at the time, which was a declaration that ER 297, which says absolutely zero about family, absolutely zero about work, positively misstates his criminal record at the time. Paul, this is just an idle question, meaning I don't know how it's actually been done except as I've read this case. But for voluntary departure, what does the family and or the work really have to do with it? Because he's still leaving, and he's not coming back for a while. I think it's the idea, Your Honor, that you don't have the attendant legal consequences to a full-blown deportation. And the people who have more ties to the United States might be able to. But wouldn't you think that the main criteria, therefore, would be how bad a guy he is? And this guy wasn't a very bad guy. He's not terrible. I'm not going to stand in front of Your Honor and say he's terrible. But DUIs, I mean, we treat those pretty differently these days. They're not great either. And when you've got the immigration judge, when he was first considered on the merits for voluntary departure, he went through a whole bunch of questions about do you have family here, et cetera. He said, I'm denying you voluntary departure for your lack of ties to the United States. We look at plausibility. Are we reviewing precedential BIA decisions, all BIA decisions? How do we determine what's plausible or not, in your view? Well, Your Honor, there's the language from the Barajas-Alvarado case, which is you look at the relief, the standards for the relief in question, and we've cited that standard in our brief. And you compare it to previous cases. And I suggest that when you do compare it to previous cases, all of the ---- the issue was whether it was an abuse of discretion not to do it. Right? It wasn't always that, but there are some. So the question is, are we looking at what IJs, some IJs do? And we don't ---- how do we even know that? Well, in this case, we know exactly what an IJ would do. He would say, you don't have any ties to the United States. Well, yes, one IJ did that. But we know that this is ---- I mean, I guess my impression is that these, at least some IJs, fairly broadly gave these out, and some didn't. And how ---- I mean, what are we trying to review? And on those ---- when there are these issues of discretionary relief from removal, that's always the case. Right. So plausible means if he ---- I mean, this ---- The unusual thing about this case was that this IJ was flat wrong in the reason he gave, flat wrong. The second IJ. Second IJ, just wrong. So, therefore, we're engaged in just a sort of guessing game as to what he would have done had he not made that flat wrong mistake. Well, I would suggest we're not engaged in a guessing game for two reasons. One, we know what an IJ did do when he had even better equities because he hadn't come back to the United States. It wasn't the same guy, right? It wasn't the same IJ. Oh, I don't believe so. Have you seen the figures for the differences between IJs? I don't know. Oh, I understand. There's a variation. But then we get to the district court where it's the defendant's burden to show some positive equities in the face of admittedly not great negative equities. Well, his main positive equities was he was here for a pretty long ---- I mean, on and off for a pretty long time. When he was ---- from when he was 14 to when ---- Right. And that he hadn't done anything ---- Terrible. ---- of major significance or even ---- How seriously do we take the fraudulent application to the Special Agricultural Worker Program? Is that something that is serious or is that something that's so typical that it's not deemed to be that serious? Well, it can't count in his favor. That's for sure. Well, they didn't say that he filed a fraudulent application. They basically said ---- They denied it. I'm sorry. They didn't believe anymore. But there was no evidence that he knew this. They also said he had been convicted of fraud. They said he had been convicted of fraud and that he had talked to the ---- Right. But whether or not ---- they didn't actually say, well, you weren't working for him or you knew this guy was fraudulent. It was not ---- he wasn't charged with fraud. That's correct. Actually, there's ---- it's a little bit confusing. There's some documents in the district court record which indicate that maybe there were some charges contemplated, either as a ground for removal or so on, but it's a different name. And I'm not ---- I can't stand before the court and say that he would have gotten hung up on that. But let's put it this way. He didn't show that he had worked in the United States. He didn't have documentation of that. In fact, the documentation that he had submitted, the INS rejected it and said, no, this is fraud. It's very likely that he was, though. What else was he doing here all that time? He said he was working. Right, but what I'm trying to suggest to Your Honor is in the district court, when it's his burden to show a plausible claim for relief, there's ---- I would urge the court to look at the declaration. There's ---- the only thing is I've been in the United States since I was 14. And notice, 14, not I came when I was an infant. That's it. I'd suggest that's not sufficient, particularly where you have an IJ already considering on the merits and saying, I'm denying you voluntary departure. So. Okay. You're over your time. Thank you for your argument. Thank you. We'll give you one minute in rebuttal. Thank you, Your Honor. I just wanted to make three points about the acceptance of responsibility. First, it seems a little strange to say that on the national level, but the fact that the B allegation is an apprendi fact and has to be pled and proven is an artifact of this circuit's law. I don't know that the Sentencing Commission took that into account. I don't know that other cases, that the case has decided ---- It's just the circuit? Pardon? It's just the circuit? Kobe and Sandoval, I believe, is the case that requires this, and I don't know that that's recognized and been followed ---- It has to be because it clearly increases the maximum sentence. Let me just say, Your Honor, I'm not aware of any out-of-circuit cases that have followed Kobe and Sandoval's reasoning. But in any case, the ---- What about the relevant conduct point? Well, as I argued in my reply brief, this is not relevant conduct. This is not even conduct of Mr. Rojas, saying that his removal is not conduct that he has conducted in the past. So this is not relevant conduct. In fact, the closest I could find is a case law that says the prior removal is not ---- Or, sorry, the prior conviction is not relevant conduct in 1326. If the prior conviction isn't relevant conduct, I don't see how the subsequent removal could be either. Now, the case law and the guidelines say, Challenges to the essential elements of guilt. It does not say, Challenges to apprendi facts. And that's significant here. We know this is a legally significant difference. Challenging sentencing factors, challenging culpability for purely to get a better sentence, is not the same thing as denial of a fact that's essential for proving guilt. And no, he didn't stand up and say, I didn't do this. And that's just the point. He didn't stand up and deny it. And no, I wasn't removed. All right. Thank you. Thank you very much. Thank both of you for your arguments. The case of United States v. Rojas-Pedroza is submitted.
judges: Berzon, Clifton, Ikuta